**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 9:24-cv-80639**

**BRENDA'S BIRDS, INC., a Florida**
**corporation,**

         **Plaintiffs,**

**v.**

**BRENDA A. FLYNN, individually,**
**WILLIAM F. FLYNN, individually, and**
**BRENDA & BILLY'S AVIARY, INC., a**
**Florida corporation,**

         **Defendants,**
_____/

**COMPLAINT**

Plaintiff, BRENDA'S BIRDS, INC. ("Plaintiff" or "Brenda's Birds"), a Florida

corporation, sues Defendants BRENDA A. FLYNN, individually, WILLIAM F. FLYNN,

individually, and BRENDA & BILLY'S AVIARY, INC., a Florida corporation, and alleges:

**Jurisdiction and Venue**

1.      This is an action for trademark false designation of origin, and unfair competition

pursuant to 15 U.S.C. § 1125, unfair competition, and tortious interference with prospective

economic advantage, under Florida common law, and for false, deceptive and misleading

advertising under Fla. Stat. §501.204 and §817.41. Accordingly, this Court has jurisdiction under

15 U.S.C. §1121, 28 U.S.C. §§1331, 1367 and 1338.

2.      This Court also has supplemental jurisdiction over this matter's state law claims

under 28 U.S.C. §1367 as the state law claims are integrally interrelated with Plaintiff's federal

claims and arise from a common nucleus of operative facts such that the administration of

Plaintiff's state law claims with its federal claims further the interest of judicial economy.

3.     This Court has personal jurisdiction over Defendants because Defendants are each located within this District, do substantial business and sales in this District, advertise, distribute, offer for sale and promote the infringing mark in this District. Defendants have committed tortious acts in this District against Plaintiff whose principal place of business is located within this District.

4.     Venue is proper in this Court pursuant to 28 U.S.C. §1391.

## PARTIES

5.     Defendant BRENDA A. FLYNN ("Brenda Flynn") is a resident of and conducts business in Palm Beach County, Florida, and is otherwise sui juris.

6.     Defendant WILLIAM F. FLYNN ("Billy Flynn") is a resident of and conducts business in Palm Beach County, Florida, and is otherwise sui juris.

7.     Defendant BRENDA & BILLY'S AVIARY, INC., formerly known as BRENDA'S BIRDS & BILLY'S PETS, INC. ("Brenda & Billy's" and together with Brenda Flynn and Billy Flynn, the "Defendants"), which Plaintiff is informed and believes is a wholly owned by Brenda Flynn and Billy Flynn, is a Florida corporation with offices and operations in Palm Beach County, Florida.

8.     Venue is proper in Palm Beach County because this is the county where the Defendants conduct business and in which the events giving rise to Plaintiffs' claims occurred.

## Fact Allegations Common to All Counts

9.     Brenda's Birds was founded in 1992 by Robert Turner ("Bob Turner") and his wife, Rosemary Turner (deceased), of Delray Beach, Florida, and incorporated on or about May 26, 1994, for the purpose of owning and operating a pet store named Brenda's Birds ("Store") offering exotic birds, bird grooming, bird boarding, and bird feed and supplies. The Turners began using

the name "Brenda's Birds" since as early as 1992.

10.     The Store was developed and opened in response to the tremendous growth and success of a home-based bird breeding business launched in the late 1980s by the Turners, both of whom were Certified Avian Specialists and Bob Turner remains so today.

11.     Over the next thirty plus years, Brenda's Birds built a reputation as a leading aviary and supply throughout Florida and beyond based on Bob Turner's aviary expertise, credentials, and business acumen.

12.     Bob Turner owns one hundred percent (100%) of the issued and outstanding shares of corporate stock in Brenda's Birds.

13.     The  trade names "Brenda's Birds" and, alone, "Brenda's," together with associated trademarks, in the context of the Store branding have become synonymous with exotic pet birds and related products and services, and have gained a secondary meaning, within the Florida and broader national aviary market.

14.     These trade names/trademarks and others, such as "Bbirds" addressed in greater detail below, are regularly used independently in print and digital media including, without limitation, on social media sites which account for a significant portion of the Store's marketing efforts. For example, there are hundreds of images on Brenda's Birds Facebook page and other social media using the different trade names and trademarks of Plaintiff including simply "Brenda's" superimposed on photos of exotic birds available for adoption.

15.     Plaintiff's staff also regularly identifies it simply as "Brenda's" when greeting customers by phone and in-person at the Store.

16.     Brenda Flynn (née Turner) is the youngest of four children of Bob Turner and Rosemary Turner and, having had taking an interest early on as a young teenager in her parents'

newfound bird breeding business, is the Store's namesake.

17.  Brenda Flynn worked at her parents' Store as a young adult for approximately six years from the time it opened until 1999 and was not employed or otherwise associated in any way with Brenda's Birds or the Store for the next twenty plus years.

18.  In 2019, Brenda Flynn (then McBrinn) recommended to her then 78-year-old father, Bob Turner, that Brenda's Birds terminate its Store manager and hire her then fiancé (now husband), Billy Flynn, as the Store manager.

19.  Having unqualified trust in his daughter at the time, Bob Turner hired Billy Flynn as Brenda's Birds Store manager in or around the summer of 2019, and Bob Turner entrusted primary management of the Store to him seemingly without issue or incident up through February 2022.

20.  But in or around March 2022, Brenda Flynn had a falling out with her father over unrelated personal matters, and unbeknownst to Bob Turner at the time and for another two years, Brenda Flynn, despite Plaintiff having never rehired her, had already begun meddling in the Store's operations and finances, as well as in other assets of her parents.

21.  For example, Brenda Flynn had already secured a power of attorney ("POA") from her mother, Rosemary Turner, in October 2017, well after Rosemary Turner was diagnosed with dementia and determined incompetent by her medical care providers.

22.  As another example (and the subject of a separate quiet title lawsuit in Vermont), on or about July 21, 2020, Brenda Flynn procured Bob Turner's signature on a document, the content and legal effect of which she falsely represented would pass title to certain real property owned by the Turners since October 2011 in Dover, Vermont ("Dover Property"), upon their deaths, to their children outside of probate.  But as Bob Turner later learned, the document was in

fact a quitclaim deed purportedly transferring all right, title, and interest of the Turners in the Dover Property to Brenda Flynn, and was even executed by Brenda Flynn (*to herself*) as agent for Rosemary Turner under the invalid POA which, in any event, expressly precluded the agent from making any gifts (*much less a gift to herself*) or changes to rights of survivorship or the estate plan of the principal.

23.     Months later, on April 24, 2021, Brenda Flynn, without prior authorization from or knowledge of Bob Turner, and under penalty of perjury, added herself as treasurer of Brenda's Birds on the 2021 annual report filed with the Florida Department of State, facilitating her unfettered access to all of Plaintiff's banking and tax records.

24.     And immediately following the March 2022 falling out with her father, Brenda Flynn commandeered operations of the Store from Robert Turner, taking over exclusive control of its valuable Facebook and Instagram and other social media accounts, its official email account address, brendasbirds12@gmail.com, and its official website, www.brendasbirds.com.

25.     At Brenda Flynn's direction, Billy Flynn and the then accountant for the Store, Judith Denton ("Denton"), began withholding certain information from Bob Turner, and the Flynns began making unauthorized withdrawals from Brenda's Birds' corporate bank account and charges on its American Express ("Amex") card for personal expenses such as, without limitation, expensive dinners, a Prime Video subscription, and monthly dues for a wine club membership.

26.     As later discovered, the Flynns had also opened competing social media accounts including, without limitation, an Instagram account and a Facebook page by the name of "Bbirds" which Plaintiff had also been using in commerce as a brand identifier and is Plaintiff's public facing username, or handle, on the www.hoobly.com advertising website and other advertising platforms which, again, are significant marketing tools upon which Plaintiff relies for the success

of its business. Postings of images to the Flynns' social media accounts consisted exclusively of images of Plaintiff's intellectual property including, without limitation, images of the Store's logos, photos of exotic birds superimposed with Plaintiff's trade names and trademarks, and even photos and videos taken inside the Store.

27.     Defendants' competing Facebook page includes an introduction to the business of "Bbirds," later renamed "Brenda's Bird & Billy's Pets," and now named "Brenda & Billy's Aviary" which reads: "We have been in the bird industry since the late 80's. Our focus is quality sweet hand fed babies, excellent products and customer service. We are certified Avian Specialists since 1992." This is language describing Plaintiff and paraphrased from content on Plaintiff's website, www.brendasbirds.com.

28.     Despite increasing bitterness from his daughter and concerns with the Store's business, and having at this point reached the age of 80 years old and adjusting to life after the recent loss of his wife of 62 years, Bob Turner, still unaware of the full extent of the Flynns' malfeasance,  attempted to cooperate with the Flynns including, without limitation, by continuing to employ and give raises to Billy Flynn and engaging in discussions regarding the potential sale of the Store to Brenda Flynn.

29.     Aside from the desire for familial harmony, Bob Turner was also driven by duress to cooperate with the Flynns as a significant portion of his income was derived from Store profits and Brenda's Birds was responsible for repayment on substantial loans from Bob Turner which he, in turn, funded by a mortgage on his personal residence and credit card.

30.     However, as the issues with the Dover Property came to light and the words, acts, and omissions of the Flynns increasingly threatened his income and loan payments and the very survival of the business he had built over the prior thirty (30) plus years, Bob Turner made the

decision to sell the Store.

31.     On April 25, 2023, Bob Turner advised Brenda Flynn of his intent to sell the Store, demanding her cooperation by not impeding or interfering with Bob Turner's access to all financial books and records of Brenda's Birds; and he demanded that Brenda Flynn quitclaim any and all interest she claimed in the Dover Property back to Bob Turner which, in any event, was a condition precedent to any sale of the Store to the Flynns.

32.     The Flynns' reaction to Bob Turner's April 25, 2023, correspondence was immediate and malicious, with proclamations in no uncertain terms to friends and family that based on how she had purportedly grown the store, Brenda Flynn was entitled to and, together with Billy Flynn, was taking over 100% ownership in the Store.

33.     Brenda Flynn immediately directed Billy Flynn to stop sending the Store's daily cash and credit card sales reports to Bob Turner.

34.     Denton immediately withdrew all cooperation with Bob Turner and denied him access to any financial books and records of the Store; he was even denied access to his own personal tax records which Denton prepared and maintained for him.

35.     Bob Turner's access to the Store's business and financial information after April 25, 2023, was limited to Plaintiff's operating account which showed dwindling receipts and its Amex account which showed increasing unauthorized expenses charged by the Flynns.

36.     Without the benefit of daily credit card sales reports from Billy Flynn anymore, Bob Turner could not reconcile the transfers from Plaintiff's merchant account to Plaintiff's operating account.

37.     And when Billy Flynn likewise refused to provide daily cash sales reports to Bob Turner after April 25, 2023, the Flynns simultaneously stopped making cash deposits into

Plaintiff's operating account.

38.     Over the ensuing nine (9) months following April 25, 2023, the Flynns would blame the Store's increasing financial struggles on Bob Turner's alleged overspending, at one point offering Bob Turner to simply give the Store to Brenda Flynn "provided there remains $35,000.00 (exclusive of money for deposits to purchase inventory, if any) in the bank account of the business."

39.     However, after Bob Turner was ultimately able to regain control of the Store from the Flynns on January 31, 2024, Plaintiff discovered, and continues to discover despite the Flynns' destruction of an untold volume of Plaintiff's electronic and hard copy business records to cover their tracks, facts confirming the true cause of the Store's near financial collapse in 2022 and 2023: The Flynns, with the assistance of Denton, orchestrated a not so sophisticated scheme to embezzle Brenda's Birds money and assets and use the ill-gotten gains of their conspiracy to start a competing business if Bob Turner otherwise refused to hand the Store over to Brenda Flynn at a nominal price.

40.     It was discovered that a year prior, on January 14, 2023, Brenda Flynn used the Brenda's Bird corporate Amex to purchase a smartphone and new cell service and number, (561)306-9572, which was used in marketing including, without limitation, in Brenda's Birds advertisements using the "Bbirds" Trade Name on industry websites such as www.hoobly.com. The (561)306-9572 was made available to customers of Brenda's Birds for communicating with the Flynns at the Store via text as an alternative to the Store's landline. The (561)306-9572 was routinely provided in emails from the Flynns to Brenda's Birds' customers, using the Store's brendasbirds12@gmail.com account, as an alternative to the Store's landline.

41.     Bob Turner later learned that immediately following their receipt of Bob Turner's

April 25, 2023, correspondence, the Flynns incorporated "Brenda's Birds & Billy's Pets, Inc.," effective May 8, 2023, with the Florida Department of State.

42.     Armed with a new phone number and a corporate FEIN, the Flynns then procured a business operating account for their new company and a merchant services account to accept credit card payments.

43.     While the Flynns' purchases of inventory ostensibly for the Store using Plaintiff's Amex or bank account remained steady, Store revenues declined for reasons now clear: The Flynns were selling Store inventory to Store customers but processing credit card payments through the "Brenda's Birds & Billy's Pets, Inc." merchant services account, thereby diverting unknown sums of revenue from Plaintiff to their new company using the identical "Brenda's Birds" Trade Name intended to confuse the public and syphon customers.

44.     For example, a copy of a Store invoice recently provided by one of Brenda's Birds customer reflects the sale of a 7-month-old Greenwing Macaw to the customer located in Mars, PA, for $6,199.00, with $250 in shipping, for a total of $6,449.00, on or about September 27, 2023; and a copy of the credit card receipt provided by the customer reflects the payment was processed through the "Brenda's Birds & Billy's Pets, Inc." merchant services account with Network Merchants, Inc. ("NMI").

45.     As another example of the Flynn's embezzlement, a Brenda's Bird's customer from Miami, Florida, purchased a Blue Indian Ringneck for $1,386.76 on January 5, 2024, with his credit card processed through the Brenda & Billy's NMI account, which the Flynns never delivered to the customer. Plaintiff was not made aware until the customer contacted the Store in late February 2024, providing Plaintiff proof of purchase and copies of his text messages exchanged with the Flynns on the (561)306-9572 cell phone just days prior, between February 23 and 26,

2024, in which the Flynns admitted they sold the customer the bird but advising the customer that "[a]t this point we will have to get the police involved. . . . They will [h]ave to either refund you or give you a bird[.] You have the proof of [e]verything."

46.     Further, given clear historical trends of cash deposits into Plaintiff's operating account from daily cash sales at the Store in the decades prior to April 25, 2023, there are tens of thousands of dollars in cash sales to Store customers during the Flynns' control stolen by the Defendants.

47.     Over the remainder of 2023, Bob Turner continued efforts to obtain access to Plaintiff's books and records by terminating Denton and hiring a new accountant, but the Flynns' obstruction and interference continue unbated with refusals to cooperate with Denton's replacement.

48.     Negotiations between Bob Turner and Brenda Flynn regarding her acquisition of the Store and reconveyance of the Dover Property stalled by the summer of 2023, and Bob Turner experienced serious health issues in the fall of 2023.

49.     All the while, the Flynns continued embezzling from the Store and their scheme to raid the corporate assets of Brenda's Birds with the goal of either falsely deflating its market value in hopes of acquiring the Store from Bob Turner at a nominal price or, if he refused, simply converting the assets of Plaintiff for their own use and benefit through a competing business, Brenda's Birds & Billy's Pets.

50.     Indeed, equipped with the (561)306-9572 cell phone and NMI merchant services account, the Flynns had already been operating surreptitiously as Brenda's Birds & Billy's Pets in the background of the official Brenda's Birds selling Plaintiff's inventory and syphoning the Store's customers, with exclusive use and control over the Store location and landline phone, the

Store's social media accounts, the Store's brendasbirds12@gmail.com email account, the Store's website, and even Bob Turner's personal Facebook page with nearly 2,000 followers comprised mostly of Brenda's Birds followers on social media.

51.     After months of silence, Brenda Flynn presented Bob Turner with a proposed Purchase and Sale Agreement for the Store on January 30, 2024, and with a portfolio of established social media accounts filled with content of all things Brenda's Birds and considerable working capital funded by their ill-gotten gains, the Flynns were prepared to immediately set up shop elsewhere under the new "Brenda's Birds & Billy's Pets" if Bob Turner did not accept the woefully inadequate purchase offer.

52.     Brenda Flynn clearly did not intend to negotiate the purchase and sale of the Store with her father in good faith and less than 24 hours later revoked her purchase offer; and on January 31, 2024, the Flynns then walked out of the Store for the last time, taking with them or otherwise destroying and manipulating the bulk of Plaintiff's electronic and hard copy business records including, without limitation, past sales orders and invoices, past boarding contracts, emails, social media messages, and other customer data.

53.     The Flynns also locked Plaintiff out from all of its and Bob Turner's valuable social media accounts including Facebook, Instagram, and TikTok, and sabotaged the e-commerce functions of Plaintiff's website, www.brendasbirds.com.

54.     Further, in addition to the large sum of money embezzled from Plaintiff, Defendants raided the Store of substantial inventory of birds, bird cages, and other aviary products and supplies including, without limitation, three Scarlet Macaws valued at more than $15,000.

55.     Defendants immediately thereafter began holding themselves out to the public as the successor to Plaintiff and announcing plans for the grand opening of a new location less than

two and one half miles from the Store, all the while misappropriating Plaintiff's "Brenda's Birds," "Brenda's," and "Bbirds" trade names/trademarks and answering the (561)306-9572 cell phone as "Brenda's Birds" or "Brenda's," causing substantial and ongoing confusion within the aviary industry between the original "Brenda's Birds" and the Flynns' new "Brenda's Birds & Billy's Pets."

56.     Prior to their exit from the Store, the Flynns installed cameras at the Store capable of monitoring activity at the Store from the Flynns' personal residence, which were not discovered by Plaintiff for a considerable time following it regaining control of the Store.

57.     Despite repeated demands from Plaintiff, Defendants refused to: turn over access to Plaintiff's social media accounts and website; return inventory taken from the Store; surrender the (561)306-9572 cell phone; turn over Plaintiff's financial, customer, and other business books and records; cease and desist from using and infringing upon the "Brenda's Birds," "Brenda's," and "Bbirds" trade names/trademarks in their business and holding themselves out as the successor to Brenda's Birds; provide any accounting of missing cash and credit sales reports; or otherwise cease and desist from wrongfully and tortiously interfering with Plaintiff's substantial and valuable customer relationships and unlawfully impeding Plaintiff's ability to resume successful business operations.

58.     The limited and negligible extent to which Defendants have complied with certain demands of Plaintiff under threat of litigation, such as an inconsequential change to the name of the corporate Defendant, is "too little, too late;" Defendants had already successfully launched a competitive business intentionally and maliciously infringing upon Plaintiff's "Brenda's Birds," "Brenda's" and "Bbirds" trade names/trademarks, funded substantially, if not wholly, by the ill-gotten gains of Defendants' embezzlement of Plaintiff's money and assets.

59.     Plaintiff has suffered extensive damages as a direct result of Defendants' unlawful conduct and Plaintiff will continue to suffer irreparable harm if the Defendants are not temporarily and permanently enjoined from continuing such malfeasance.

60.     Plaintiff has retained the undersigned counsel to prosecute this action on its behalf and is obligated to pay reasonable attorneys' fees to the law firm of the undersigned counsel for such representation in prosecuting this matter.

## COUNT I – FALSE DESIGNATION OF ORIGIN
## Of TRADEMARK (15 U.S.C. §1125)

61.     Plaintiff re-alleges and incorporates by this reference the allegations contained in paragraphs 1 through 60 above, as if fully set forth under this Count.

62.     In violation of 15 U.S.C.  §1125(a), Defendants, independently and in conspiracy with one another, used in commerce a slogan, trade dress, word, term , name, symbol, or device, or a combination thereof, or a false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which was and is likely to cause confusion or to cause mistake, or to deceive consumers as to an affiliation, connection, or association with Plaintiff

63.     Without limitation, Defendants willfully used trade names bearing infringing versions of Plaintiff's "Brenda's Birds," "Brenda's" and "Bbirds" trade names and infringed on Plaintiff's nationwide common law rights therein. Defendants also falsely designated the Plaintiff's "Brenda's Birds," "Brenda's" and "Bbirds" trade names/trademarks, and products offered for sale by them, as originating/being distributed by Plaintiff, when they are not.

64.     As a direct and proximate result of Defendants' willful misconduct, Plaintiff has suffered, and is suffering, economic damages and irreparable harm to the value and goodwill associated with its common-law trademarks, including Plaintiff's "Brenda's Birds," "Brenda's" and "Bbirds" trade names/trademarks, and associated reputations, brand values, and goodwill.

**THE LOMNITZER LAW FIRM, P.A.**
7999 N. Federal Hwy, Suite 202, Boca Raton, FL 33487 ● Telephone (561)953-9300● Fax (561)953-3455

65.     Unless Defendants are restrained and enjoined from further infringement of Plaintiff's "Brenda's Birds," "Brenda's" and "Bbirds" trade names/trademarks, and from falsely designating their origin  with Plaintiff, Plaintiff will continue to be economically damaged and irreparably harmed.

66.     Plaintiff has no adequate remedy at law that could compensate it for the continued and irreparable harm it has suffered, and will continue to suffer, if Defendants' infringement and dilution are allowed to continue. Thus, Plaintiff seeks, and it entitled to, preliminary and permanent injunctive relief.

67.     As a direct and proximate result of Defendants' willful misconduct, Defendants have earned illicit profits, and Plaintiff has suffered lost profits from lost sales, in amounts not yet known but to be determined at trial. Plaintiff is entitled to damages, trebled damages, and reasonable attorneys' fees, in amounts not yet known, but to be determined at trial.

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

1)      For judgment that:

   a.   All Defendants have violated Section 43 of the Lanham Act, 15 U.S.C. § 1125 (unfair competition, false designation of origin, common-law trademark and trade dress infringement);

   b.   In all instances, Defendants acted in bad faith, willfully, intentionally, and/or in malicious disregard of Plaintiff's protected rights.

2)      For an order preliminarily and permanently enjoining Defendants, their agents, their servants, their employees, and their officers, and all those acting in concert or participation with them, who receive actual notice by personal service or otherwise, pending the final hearing and determination of this action, from directly or indirectly, anywhere in the world:

**THE LOMNITZER LAW FIRM, P.A.**
7999 N. Federal Hwy, Suite 202, Boca Raton, FL 33487 ● Telephone (561)953-9300● Fax (561)953-3455

a. Manufacturing, making, buying, purchasing, importing, shipping, delivering, advertising, marketing, promoting, offering to sell, selling, or otherwise distributing or disposing of, in any manner, any counterfeit or infringing products or services bearing:

    i. Infringing or counterfeit versions of the Brenda's Birds and BBirds tradenames/trademarks, which appear alone or in combination; and/or

    ii. The false statement that such products/services are "Affiliated or derived and/or sold by Plaintiff or Mr. Turner", or otherwise under Plaintiff's control or supervision, when they are not;

b. Committing acts calculated to cause purchasers to believe that infringing Brenda's Birds and BBirds tradenames/trademarks products originate with Plaintiff, when they do not;

c. In any way infringing or damaging the Brenda's Birds and BBirds tradenames/trademarks, or the value or goodwill associated therewith;

d. Attempting, causing, or assisting in any of the above-described acts, including but not limited to enabling others in the above-described acts, or passing on information to others to allow them to do so; and

e. Forming or causing to be formed any corporation or other entity that engages in the above-described acts.

3) For an order requiring Defendants to cooperate with Plaintiff in good faith in its investigation of counterfeit sales at their retail and wholesale establishments, including, without limitation by:

    a.   Permitting Plaintiff's representatives or their designees to conduct inspections of Defendants' inventories of products to determine if any such products are counterfeit or otherwise infringing, or otherwise belonging to Plaintiff and permitting Plaintiff's representatives to obtain and retain possession of any such counterfeit products;

4)    For an order:

    a.   Requiring Defendants to account for and pay over to Plaintiff all profits derived from their wrongful misconduct to the full extent provided for by Section 35(a) of the Lanham Act, 15 U.S.C. § 11 1 7(a);

    b.   Requiring Defendants to account for and pay to Plaintiff enhanced damages resulting from their wrongful misconduct to the full extent provided for by Section 35(6) of the Lanham Act, 15 U.S.C. § 1117(6);

    c.   Awarding Plaintiffs damages, or statutory damages in an amount not less than $2 million ($2,000,000) per trademark pursuant to Section 35(c) of the Lanham Act,15 U.S.C. § 1117(c), or in the alternative $200,000 per trademark pursuant to 15 U.S.C. §1117(c)(l);

    d.   Awarding any and all other damages permitted by the Lanham Act, including compensation for damage to the value of Plaintiff's  trademarks, its reputation among U.S. consumers, its goodwill, and other damages in an amount not yet known, but to be proved at trial;

    e.   Awarding Plaintiff its costs of suit, including reasonable attorneys' fees and investigation costs; and

    f.   Awarding such other and further relief as this Court deems just and proper.

## COUNT II – FEDERAL UNFAIR COMPETITION (LANHAM ACT § 43(a))

68.     Plaintiff re-alleges and incorporates by this reference the allegations contained in paragraphs 1 through 60 above, as if fully set forth under this Count.

69.     Defendants' use of Plaintiff's "Brenda's Birds," "Brenda's" and "Bbirds" trade names/trademarks tends to falsely describe their products and services within the meaning of the Lanham Act.  Defendants' conduct is likely to cause confusion, mistake, or deception by or in the public as to the affiliation, connection, association, origin, sponsorship, or approval of Defendants' products and services to the detriment of Plaintiff and consumers.

70.     As a direct and proximate result of Defendants' infringing activities, Plaintiff is entitled to recover Defendants' unlawful profits and Plaintiff's substantial damages under  15 U.S.C. § 1117(a).

71.     Defendants' infringement of Plaintiff's "Brenda's Birds," "Brenda's" and "Bbirds" trade names/trademarks is an exceptional case and was intentional, entitling Plaintiff to treble the amount of its damages and profits, and to an award of attorneys' fees under 15 U.S.C. § 1117(a).

72.     Plaintiff is entitled to injunctive relief pursuant to 15 U.S.C. § 1116(a).

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

1)     For judgment that:

a.   All Defendants have violated Section 43 of the Lanham Act, 15 U.S.C. § 1125 (unfair competition, false designation of origin, common-law trademark and trade dress infringement);

b.   In all instances, Defendants acted in bad faith, willfully, intentionally, and/or in malicious disregard of Plaintiff's protected rights.

2)     For an order preliminarily and permanently enjoining Defendants, their agents,

their servants, their employees, and their officers, and all those acting in concert or participation with them, who receive actual notice by personal service or otherwise, pending the final hearing and determination of this action, from directly or indirectly, anywhere in the world:

    a. Manufacturing, making, buying, purchasing, importing, shipping, delivering, advertising, marketing, promoting, offering to sell, selling, or otherwise distributing or disposing of, in any manner, any counterfeit or infringing products or services bearing:

        i. Infringing or counterfeit versions of the Brenda's Birds and BBirds tradenames/trademarks, which appear alone or in combination; and/or

        ii. The false statement that such products/services are "Affiliated or derived and/or sold by Plaintiff or Mr. Turner", or otherwise under Plaintiff's control or supervision, when they are not;

    b. Committing acts calculated to cause purchasers to believe that infringing Brenda's Birds and BBirds tradenames/trademarks products originate with Plaintiff, when they do not;

    c. In any way infringing or damaging the Brenda's Birds and BBirds tradenames/trademarks, or the value or goodwill associated therewith;

    d. Attempting, causing, or assisting in any of the above-described acts, including but not limited to enabling others in the above-described acts, or passing on information to others to allow them to do so; and

    e. Forming or causing to be formed any corporation or other entity that engages in the above-described acts.

3)      For an order requiring Defendants to cooperate with Plaintiff in good faith in its investigation of counterfeit sales at their retail and wholesale establishments, including, without limitation by:

    a.  Permitting Plaintiff's representatives or their designees to conduct inspections of Defendants' inventories of products to determine if any such products are counterfeit or otherwise infringing, or otherwise belonging to Plaintiff and permitting Plaintiff's representatives to obtain and retain possession of any such counterfeit products;

4)      For an order:

    a.  Requiring Defendants to account for and pay over to Plaintiff all profits derived from their wrongful misconduct to the full extent provided for by Section 35(a) of the Lanham Act, 15 U.S.C. § 11 1 7(a);

    b.  Requiring Defendants to account for and pay to Plaintiff enhanced damages resulting from their wrongful misconduct to the full extent provided for by Section 35(6) of the Lanham Act, 15 U.S.C. § 1117(6);

    c.  Awarding Plaintiffs damages, or statutory damages in an amount not less than $2 million ($2,000,000) per trademark pursuant to Section 35(c) of the Lanham Act,15 U.S.C. § 1117(c), or in the alternative $200,000 per trademark pursuant to 15 U.S.C. §1117(c)(l);

    d.  Awarding any and all other damages permitted by the Lanham Act, including compensation for damage to the value of Plaintiff's  trademarks, its reputation among U.S. consumers, its goodwill, and other damages in an amount not yet known, but to be proved at trial;

e.   Awarding Plaintiff its costs of suit, including reasonable attorneys' fees and investigation costs; and

f.   Awarding such other and further relief as this Court deems just and proper.

## COUNT III – FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT
### (Fla. Stat §§501.201 to 501.213)

73.   Plaintiff re-alleges and incorporates by this reference the allegations contained in paragraphs 1 through 60 above, as if fully set forth under this Count.

74.   Defendants' actions specified in the paragraphs incorporated into this Count constitute unfair and deceptive acts or practices in conduct of trade or commerce in violation of Florida Statute §501.204.

75.   Defendants willfully used or practiced these unlawful acts under §501.204, and knew or should have known that their acts were unlawful and would damage Plaintiff and injure consumers deceptively.

76.   Defendants Brenda Flynn and Billy Flynn condoned, directed, and participated in the decision to adopt and use Defendant Brenda & Billy's infringing trade names, domain name, and social media accounts, all infringing upon Plaintiff's "Brenda's Birds," "Brenda's" and "Bbirds" trade names/trademarks in Defendant Brenda & Billy's advertising keywords for services in the aviary industry within the same geographic area.

77.   Plaintiff has been damaged directly and proximately by Defendants' unlawful actions.

78.   Plaintiff is entitled to recover actual damages, plus reasonable attorney's fees and costs, for Defendants' violation of the Florida Deceptive and Unfair Trade Practices Act.

WHEREFORE, Plaintiff Brenda's Birds, Inc., respectfully requests that this Court enter judgment against Defendants, BRENDA A. FLYNN, WILLIAM F. FLYNN, and BRENDA &

THE LOMNITZER LAW FIRM, P.A.
7999 N. Federal Hwy, Suite 202, Boca Raton, FL 33487 ● Telephone (561)953-9300● Fax (561)953-3455

BILLY'S AVIARY, INC., and each of them, jointly and severally, for damages in an amount to be proven at trial, together with costs and a reasonable attorneys' fees as may be recoverable by law or in equity; and grant any and all other relief this Court deems just and proper.

## COUNT IV – BREACH OF FIDUCIARY DUTIES

79.     Plaintiff re-alleges and incorporates by this reference the allegations contained in paragraphs 1 through 60 above, as if fully set forth under this Count.

80.     When Brenda Flynn designated herself as the "treasurer" of Plaintiff on its 2021 Annual Report and began engaging in the business operations of the Store in no later than April 2021, albeit unilaterally and voluntarily, she undertook a fiduciary duty of loyalty to Plaintiff and its sole shareholder, Bob Turner.

81.     When Billy Flynn accepted the position as the Store manager for Plaintiff in or around 2019, he undertook a fiduciary duty of loyalty to Plaintiff and its sole shareholder, Bob Turner.

82.     The actions of Defendants Brenda Flynn and Billy Flynn, and each of them, specified in the paragraphs incorporated into this Count constitute breaches of their fiduciary duties of loyalty to Plaintiff when the they began withholding information from Plaintiff's sole shareholder and director, Bob Turner; misappropriating Store revenues for personal benefit; embezzling Store funds and assets; and eventually forming and syphoning Store customers through Brenda's Birds and Billy's Pets, Inc., all while misrepresenting to the Store's customers and vendors that they were the lawful owners of or were lawfully taking over Plaintiff's business.

83.     Plaintiff has been damaged directly and proximately by the Flynns' unlawful actions and breaches of fiduciary duties and is entitled to recover actual damages from the Flynns, and each of them.

84.     The Flynns' egregious conduct alleged above constitutes breaches of fiduciary duties under circumstances resulting in and having the adverse effect of a wholesale misappropriation of nearly Plaintiff's entire business, directly causing damages to Plaintiff equal to no less than the goodwill value associated with the Store's business as a "going concern" prior to the Flynns' misappropriation of same.

85.     Given the extent to which the Flynns embezzled money from, and raided the assets and syphoned customers of, the Store in breach of their fiduciary duties to Plaintiff, the imposition of a constructive trust is warranted over Brenda and Billy's, a business built entirely on the goodwill of and rightfully owned by Plaintiff, until such time as a judgment for damages is satisfied.

WHEREFORE, Plaintiff Brenda's Birds, Inc., respectfully requests that this Court enter judgment against Defendants BRENDA A. FLYNN, and WILLIAM F. FLYNN, and each of them, jointly and severally, for damages in an amount to be proven at trial together with costs and reasonable attorneys' fees as may  be recoverable by law or in equity, and imposing a constructive trust over the business of Defendant BRENDA & BILLY'S AVIARY, INC., until such time as such judgment for damages is satisfied; and grant any and all other relief this Court deems just and proper.

## **COUNT V – FRAUD**

86.     Plaintiff re-alleges and incorporates by this reference the allegations contained in paragraphs 1 through 60 above, as if fully set forth under this Count.

87.     The actions of Defendants Brenda Flynn and Billy Flynn, and each of them, specified in the paragraphs incorporated into this Count constitute actual, but no less than constructive, fraud.

88.     Brenda Flynn and Billy Flynn, and each of them, made and at all relevant times continued to make material representations to Plaintiff that they, and each of them, in their respective officer/managerial roles would act and were acting in the best interest of Plaintiff and its shareholder, Bob Turner, when operating and managing the Store, and that they would not engage and were not engaging in self-dealing.

89.     Such material representations were made in reference to ensuring the successful continuity of the Store's business, and for the purpose of inducing Plaintiff to rely on such representations in continuing to employ and extend raises to Billy Flynn and to eventually sell the Store to Brenda Flynn.

90.     Plaintiff reasonably relied upon such material representations of the Flynns to its detriment.

91.     As alleged above, such representations made by the Flynns, or either of them, were false and the Flynns each knew such representations were false. However, at all relevant times, Brenda Flynn and Billy Flynn had a fiduciary relationship to Plaintiff and its shareholder, Bob Tuner, by virtue of their respective managerial positions at the Store and, therefore, regardless of their intent at the time any such misrepresentations were made, such false representations constitute no less than constructive fraud.

92.     The Flynns, instead of acting in the best interest of Plaintiff and its shareholder, Bob Turner, in operating and managing the Store as represented, were engaging in extensive fraud upon Plaintiff by embezzling money from and raiding the assets of Plaintiff, eventually forming and syphoning Store customers through Brenda's Birds and Billy's Pets, Inc., and misrepresenting to the Store's customers and vendors that they were the lawful owners of or were lawfully taking over Plaintiff's business.

93.     Plaintiff has been damaged directly and proximately by the Flynns' unlawful actions and fraud and is entitled to recover actual damages from the Flynns, and each of them.

94.     The Flynns' egregious conduct alleged above constitutes fraud under circumstances resulting in and having the adverse effect of a wholesale misappropriation of nearly Plaintiff's entire business, directly causing damages to Plaintiff equal to no less than the goodwill value associated with the Store's business as a "going concern" prior to the Flynns' misappropriation of same.

95.     Given the extent to which the Flynns embezzled money from, and raided the assets and syphoned customers of, the Store in the commission of their fraud against Plaintiff, the imposition of a constructive trust is warranted over Brenda and Billy's, a business built entirely on the goodwill of and rightfully owned by Plaintiff, until such time as a judgment for damages is satisfied.

WHEREFORE, Plaintiff Brenda's Birds, Inc., respectfully requests that this Court enter judgment against Defendants BRENDA A. FLYNN, and WILLIAM F. FLYNN, and each of them, jointly and severally, for damages in an amount to be proven at trial together with costs and reasonable attorneys' fees as may  be recoverable by law or in equity, and imposing a constructive trust over the business of Defendant BRENDA & BILLY'S AVIARY, INC., until such time as such judgment for damages is satisfied; and grant any and all other relief this Court deems just and proper.

### COUNT VI – CONVERSION

96.     Plaintiff re-alleges and incorporates by this reference the allegations contained in paragraphs 1 through 60 above, as if fully set forth under this Count.

97.     Plaintiff has clear legal right, title, and interest to and ownership of all of its

confidential and proprietary business information and customer lists including, without limitation, past sales orders and invoices, past boarding contracts, emails, social media messages, and other customer data; its tangible assets including, without limitation, inventory of birds, bird cages, and other aviary products and supplies (including, without limitation, three Scarlet Macaws valued at more than $15,000); and all other tangible and intangible assets and resources necessary for its continued success of Plaintiff's business as a leading aviary and supply throughout Florida and beyond.

98.     Defendants' actions specified in the paragraphs incorporated into this Count constitute conversion by virtue of the acts of dominion wrongfully asserted by Defendants, and each of them, over Plaintiff's tangible and intangible property including, without limitation, Plaintiff's "Brenda's Birds," "Brenda's" and "Bbirds" trade names/trademarks and the goodwill associated therewith, wholly inconsistent with any of the Defendants' ownership therein and wrongfully depriving Plaintiff of such assets the possession to which it is entitled.

99.     Plaintiff has been damaged directly and proximately by the Defendants' unlawful actions and conversion and is entitled to recover actual damages from the Defendants, and each of them.

100.    Further, it would be inequitable for Defendants, or any of them, to maintain ownership or possession over such assets rightfully belonging to Plaintiff.

101.    The Defendants' egregious conduct alleged above constitutes wrongful conversion under circumstances resulting in and having the adverse effect of a wholesale misappropriation of nearly Plaintiff's entire business, directly causing damages to Plaintiff equal to no less than the goodwill value associated with the Store's business as a "going concern" prior to the Defendants' misappropriation of same.

102.     Given the extent to which the Flynns embezzled money from, and raided the assets and syphoned customers of, the Store through Brenda's Birds and Billy's Pets, Inc., in the commission of the Defendants' conversion of Plaintiff's tangible and intangible assets, the imposition of a constructive trust is warranted over Brenda and Billy's, a business built entirely on the goodwill of and rightfully owned by Plaintiff, until such time as a judgment for damages is satisfied.

WHEREFORE, Plaintiff Brenda's Birds, Inc., respectfully requests that this Court enter judgment against Defendants BRENDA A. FLYNN, WILLIAM F. FLYNN, and BRENDA & BILLY'S AVIARY, INC., and each of them, jointly and severally, for damages in an amount to be proven at trial together with costs and reasonable attorneys' fees as may  be recoverable by law or in equity, for return of any and all tangible and intangible assets of Plaintiff still in Defendants' possession, and imposing a constructive trust over the business of Defendant BRENDA & BILLY'S AVIARY, INC., until such time as such judgment for damages is satisfied; and grant any and all other relief this Court deems just and proper.

## <u>COUNT VII – TORTIOUS INTERFERENCE</u>

103.     Plaintiff re-alleges and incorporates by this reference the allegations contained in paragraphs 1 through 60 above, as if fully set forth under this Count.

104.     Defendants' actions specified in the paragraphs incorporated into this Count constitute tortious interference by each of them with the existing and prospective business relationships of Plaintiff with its customers and vendors.

105.     Defendants, and each of them, were intimately aware of and familiar with the existing business relationships Plaintiff enjoyed with its customers and vendors, including those vendors with which the Store had trade credit relationships; and Defendants were equally aware

of and familiar with the prospective business relationships Plaintiff enjoyed as a leading aviary and supply throughout Florida and nationally as a result of the goodwill associated with its successful business operations over the 30 plus years prior to Defendants' misappropriation of same.

106.    As alleged above, Defendants interfered with such relationships of Plaintiff, forming Brenda's Birds and Billy's Pets, Inc., and misrepresenting to the Store's customers and vendors that they were the lawful owners of or were lawfully taking over Plaintiff's business.

107.    Defendants' egregious conduct alleged above was intentional and unjustified, and constitutes tortious interference with Plaintiff's advantageous business relationships, both existing and prospective.

108.    Plaintiff has been damaged directly and proximately by the Defendants' unlawful actions and tortious interference with its advantageous business relationships and is entitled to recover actual damages from the Defendants, and each of them.

109.    The Defendants' egregious conduct alleged above constitutes tortious interference with Plaintiff's advantageous business relationships under circumstances resulting in and having the adverse effect of a wholesale misappropriation of nearly Plaintiff's entire business, directly causing damages to Plaintiff equal to no less than the goodwill value associated with the Store's business as a "going concern" prior to the Defendants' misappropriation of same.

110.    Given the extent to which the Flynns embezzled money from, and raided the assets and syphoned customers of, the Store through Brenda's Birds and Billy's Pets, Inc., in the commission of their tortious interference with Plaintiff's advantageous business relationships, the imposition of a constructive trust is warranted over Brenda and Billy's, a business built entirely on the goodwill of and rightfully owned by Plaintiff, until such time as a judgment for damages is

satisfied.

WHEREFORE, Plaintiff Brenda's Birds, Inc., respectfully requests that this Court enter judgment against Defendants BRENDA A. FLYNN, WILLIAM F. FLYNN, and BRENDA & BILLY'S AVIARY, INC., and each of them, jointly and severally, for damages in an amount to be proven at trial together with costs and reasonable attorneys' fees as may be recoverable by law or in equity, and imposing a constructive trust over the business of Defendant BRENDA & BILLY'S AVIARY, INC., until such time as such judgment for damages is satisfied; and grant any and all other relief this Court deems just and proper.

## COUNT VIII – CIVIL CONSPIRACY

111.    Plaintiff re-alleges and incorporates by this reference the allegations contained in paragraphs 1 through 60 above, as if fully set forth under this Count.

112.    Defendants' actions specified in the paragraphs incorporated into this Count constitute a civil conspiracy among each of them and others not named as defendants herein.

113.    Defendants, and each them, together with Denton, agreed amongst themselves to a scheme designed to embezzle money and assets from the Store, syphon Store customers, and use the ill-gotten gains of the conspiracy to fund a competing business, Brenda's Birds and Billy's Pets, Inc., if Plaintiff otherwise refused to sell the Store to Brenda Flynn at a nominal price.

114.    As alleged above, the Defendants, and each of them, together with Denton, carried out such acts of embezzlement, deceptive and unfair trade practices, breaches of loyalty, fraud, conversion, and tortious interference all in pursuance of their conspiracy.

115.    Plaintiff has been damaged directly and proximately by the Defendants' unlawful actions in pursuance of their conspiracy against Plaintiff and is entitled to recover actual damages from the Defendants, and each of them.

116.    The Defendants' egregious conduct alleged above constitutes a civil conspiracy under circumstances resulting in and having the adverse effect of a wholesale misappropriation of nearly Plaintiff's entire business, directly causing damages to Plaintiff equal to no less than the goodwill value associated with the Store's business as a "going concern" prior to the Flynns' misappropriation of same.

117.    Given the extent to which the Flynns embezzled money from, and raided the assets and syphoned customers of, the Store through Brenda's Birds and Billy's Pets, Inc., in pursuance of their conspiracy against Plaintiff, the imposition of a constructive trust is warranted over Brenda and Billy's, a business built entirely on the goodwill of and rightfully owned by Plaintiff, until such time as a judgment for damages is satisfied.

WHEREFORE, Plaintiff Brenda's Birds, Inc., respectfully requests that this Court enter judgment against Defendants BRENDA A. FLYNN, WILLIAM F. FLYNN, and BRENDA & BILLY'S AVIARY, INC., and each of them, jointly and severally, for damages in an amount to be proven at trial together with costs and reasonable attorneys' fees as may be recoverable by law or in equity, and imposing a constructive trust over the business of Defendant BRENDA & BILLY'S AVIARY, INC., until such time as such judgment for damages is satisfied; and grant any and all other relief this Court deems just and proper.

<u>DEMAND FOR JURY TRIAL</u>:

Plaintiff claims and demands a jury trial as to all issues so triable.

Dated: May 17, 2024                              Respectfully submitted,

                                                 <u>s/ *Lorri Lomnitzer*</u>
                                                 Lorri Lomnitzer, Esq.
                                                 Florida Bar No. 37632
                                                 Lorri@Lomnitzerlaw.com
                                                 Rodney H. Dusinberre, Esq.
                                                 Florida Bar No.: 620483
                                                 Rod@Lomnitzerlaw.com
                                                 THE LOMNITZER LAW FIRM, P.A.
                                                 7999 N. Federal Highway, Ste. 202
                                                 Boca Raton, FL 33487
                                                 Telephone: (561) 953-9300
                                                 Fax: (561) 953-3455
                                                 *Attorneys for the Plaintiff*